IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01050-PAB

JENNIFER (GARY) LEAFORD CODNER et al.,

      Petitioners,

v.

JOHNNY CHOATE, in his official capacity as warden of the Aurora Contract Detention
Facility owned and operated by Geo Group Inc. et al.,

      Respondents.

---

## ORDER

---

This matter is before the Court on petitioners' Petition for Writ of Habeas Corpus

[Docket No. 1] and Petitioners' Motion for Temporary Restraining Order [Docket No. 2].[1]

The Court has jurisdiction pursuant to 28 U.S.C. § 2241.  Respondents have responded

to both.  *See* Docket No. 22; Docket No. 26.

## I.  BACKGROUND

Petitioners are immigration detainees being held at the Aurora Contract

---

[1] Fourteen individuals filed the petition for writ of habeas corpus.  *Id.* at 1.
However, since filing, Immigration and Customs Enforcement ("ICE") has released nine
petitioners.  *See* Docket No. 22-1 at 2-3, ¶¶ 5-6; Docket No. 27-1 at 3, ¶ 4.
Respondents suggest, and petitioners agree, that the writ and motion for temporary
restraining order ("TRO") are moot as to these nine individuals.  *See* Docket No. 22 at
18; Docket No. 24 at 5 n.3.  Because these nine petitioners have already been
released, the writ and motion for TRO are moot as to them.  *See, e.g.*, *Rodriguez-
Heredia v. Holder*, 639 F.3d 1264, 1267 (10th Cir. 2011); *Ferry v. Gonzales*, 457 F.3d
1117, 1132 (10th Cir. 2006).  As a result, the Court limits its discussion and analysis to
the remaining petitioners currently detained at the Facility.

Detention Facility in Aurora, Colorado ("the Facility"), an ICE-contracted detention facility.  Docket No. 1 at 3, ¶ 1.  Petitioners are in varying stages of the deportation process, with some seeking asylum or withholding from removal.  *See generally id.* at 8-16.  Each petitioner claims to have an underlying health issue that may make him or her more susceptible to serious complications from COVID-19.  *See generally id.*

Jennifer Codner is a fifty-four-year-old woman from Jamaica.[2]  Docket No. 2-4 at 2-3, ¶¶ 1-2.  She suffers from hypertension and allergies.[3]  *Id.* at 3, ¶ 3.  Ms. Codner is currently housed by herself; she does not share the pod she is in with any other detainee.  Docket No. 2-4 at 4, ¶ 7; Docket No. 22-2 at 6, ¶ 41.  She does not recreate with other detainees.  Docket No. 22-2 at 6, ¶ 41.  Ms. Codner does have access to some commonly used spaces such as the law library.  *Id.*  Ms. Codner is provided a new face mask on Mondays, Wednesdays, and Fridays each week.  *Id.*

Ndi Temah is a twenty-four-year-old man from Cameroon.  Docket No. 2-5 at 2,

---

[2] Ms. Codner's legal first name is Gary.  Docket No. 2-4 at 2, ¶ 1.  Ms. Codner is transgender and her preferred name is Jennifer.  *Id.*  Many of the other petitioners have preferred names and pronouns.  *See generally* Docket No. 1 at 8-16 ¶¶ 15-28.  The Court uses petitioners' preferred names and pronouns throughout this Order.

[3] According to the Centers for Disease Control and Prevention ("CDC"), a serious heart condition like pulmonary hypertension is a high-risk factor for severe illness from COVID-19.  *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups -at-higher-risk.html.  Allergies are not a risk factor.  *Id.*  Additionally, those whose sole underlying medical condition is hypertension, rather than pulmonary hypertension, are not at high risk.  *See Patients with Hypertension*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension.  As a result, Ms. Codner is not in a high-risk group for severe illness from COVID-19.

¶ 1.  Mr. Temah suffers from hypertension, Mobitz Type 1, post-traumatic stress disorder ("PTSD"), depression, and severe anxiety.[4]  *Id.*, ¶ 2.  Mr. Temah was recently transferred to C4 Pod, a pod that was previously under quarantine.  Docket No. 23-1 at 2, ¶ 6; Docket No. 25-1 at 2.  He shares a cell with four other detainees in a pod with a total of forty-five other people.  Docket No. 25-1 at 2, ¶ 2-4.  Mr. Temah is housed in the upstairs unit of the pod with twenty-three other people.  *Id.*, ¶ 4.  Mr. Temah is provided a new facemask on Mondays, Wednesdays, and Fridays each week.  Docket No. 22-3 at 3, ¶ 19.

Madeline Tatis Belliard is a forty-year-old woman from the Dominican Republic. Docket No. 2-6 at 2, ¶ 1.  Ms. Belliard has HIV, asthma, schizoaffective disorder, gender identity disorder, and dysthemic disorder.[5]  *Id.* at 2-3, ¶ 3.  She is housed in her own private pod and does not recreate with other detainees.  Docket No. 22-4 at 5, ¶ 16. Ms. Belliard is provided a new face mask on Mondays, Wednesdays, and Fridays each week.  *Id.*

Sanela Hamzic is a fifty-two-year-old woman from Bosnia and Herzegovina.

---

[4] Mr. Temah's heart condition, Mobitz Type 1, may put him at risk of severe complications from COVID-19.  *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[5] Moderate to severe asthma is a high-risk factor for complications from COVID-19.  *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions /groups-at-higher-risk.html.  Additionally, those with HIV who are not on HIV treatment or who have a low CD4 cell count are at higher risk from COVID-19.  *Id.*  Ms. Belliard is on treatment for HIV and does not inform the Court of the seriousness of her asthma. Docket No. 2-6 at 2-3, ¶ 3.  Ms. Belliard has failed to present sufficient evidence for the Court to conclude that she is at higher risk should she contract COVID-19.

Docket No. 2-7 at 2, ¶ 1.  She has diabetes, asthma, high blood pressure, attention

deficit disorder, depression, and PTSD.[6]  *Id.* at 2-3, ¶ 3.  She also previously had cancer

in her lungs and ovaries, which resulted in the removal of one of her lungs and a

hysterectomy.  *Id.*  She is housed in a dormitory with nine other people.  Docket No. 22-

5 at 5, ¶ 22.  Ms. Hamzic has shared recreation time with a maximum of nine other

detainees.  *Id.*  She recreates with the same detainees each day.  *Id.*  Ms. Hamzic is

provided a new face mask on Mondays, Wednesdays, and Fridays each week.  *Id.*

Rafael Soria Mora is a forty-six-year-old man from Mexico.  Docket No. 2-8 at 2,

¶ 1.  Mr. Mora has chronic asthma, hypertension, and sleep apnea.[7]  *Id.* at 3, ¶ 5.  He

shares a cell with one other detainee in a dormitory with forty-three other people.

Docket No. 2-8 at 5, ¶ 9.  Mr. Mora recreates with the same detainees every day.

Docket No. 22-6 at 4-5, ¶ 21.  Mr. Mora is provided a new face mask on Mondays,

Wednesdays, and Fridays each week.  *Id.*

---

[6] Ms. Hamzic's diabetes puts her in a high-risk group for COVID-19.  *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[7] Mr. Mora states that he uses an inhaler ten to eleven times each day because he is out of breath and cannot speak.  *Id.* at 3, ¶ 5.  He says that he "cannot capture air and [] feel[s] like [he] is drowning."  *Id.*  In his declaration, Doctor Franco-Paredes states that Mr. Mora is at high-risk due to his history of respiratory illness.  Docket No. 2-1 at 15, ¶ 44.  Moderate to severe asthma in combination with hypertension could put Mr. Mora at high-risk for severe complications from COVID-19.  *See Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html; *Patients with Hypertension*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension.  Therefore, the Court assumes that Mr. Mora is in a high-risk group.

To combat the risks of COVID-19, respondents are taking the following measures.  First, in regard to the Facility as a whole, the Facility is operating at less than half capacity, allowing more physical distancing than would be available were the Facility operating at a higher capacity.  Docket No. 22-8 at 6, ¶ 16.  Additionally, visits are generally prohibited.  Professional visits are noncontact and social visits and facilities tours are suspended.  *Id.* at 7, ¶ 20.

Second, regarding detainees, respondents have done the following.  Anyone with symptoms consistent with COVID-19 is placed in isolation.  *Id.* at 3-4, ¶ 9.  If a detainee has known exposure to COVID-19 and is asymptomatic, that person is placed in a cohort of other detainees with known exposure for fourteen days.  *Id.* at 4-5, ¶ 12.  If there are no new cases for fourteen days, cohorting ends.  *Id.*  New detainees are separated from current detainees for fourteen days before being allowed to interact with current detainees.  Docket No. 22-9 at 4, ¶ 11.

In pod style housing, most cells have been limited to no more than two detainees per cell.  *Id.*, ¶ 12.  Detainees have access to "dayrooms and recreation facilities on a rotating basis."  Docket No. 22-8 at 7-8, ¶ 24.  At least a subset of detainees are recreating with the same detainees each day.  *See, e.g.*, Docket No. 22-5 at 5, ¶ 22.  Respondents have "decreased the number of individuals allowed in a dayroom at any given time."  Docket No. 22-8 at 7-8, ¶ 24.  For example, in "common areas with television and game access," there may be no more than twenty detainees at a time, "depending on the housing unit."  Docket No. 22-9 at 4-5, ¶ 12.  Detainees are required to maintain six feet apart in dayrooms and recreation facilities.  Docket No. 22-8 at 7-8,

5

¶ 24.  Dayrooms are disinfected after each group.  *Id.*

Third, as to staff and employees, respondents have taken several steps.  Staff have been given personal protective equipment ("PPE") and must have their temperature taken before entering the Facility.  Docket No. 22-8 at 6-7, ¶ 19f; Docket No. 22-9 at 3-4, ¶ 10.  Anyone entering the Facility must answer a screening questionnaire which assesses potential exposure to COVID-19 and whether that person is exhibiting any symptoms of COVID-19.  Docket No. 22-9 at 3-4, ¶ 10.  If someone trying to enter the Facility has a fever, he or she will be prohibited from entering.  *Id.* Staff who are sick are not permitted to enter.  *Id.*[8]

Petitioners filed a petition for writ of habeas corpus on April 14, 2020.  *See* Docket No. 1.  Given their underlying health issues, petitioners request release from detention at the Facility.  *Id.* at 40.  Specifically, petitioners argue that their detention violates the Fifth Amendment and Eighth Amendment and, as a result, they should be released pursuant to 28 U.S.C. § 2241.  *See generally* Docket No. 2*.*

## II.  LEGAL STANDARD

The standard for a TRO is the same as that for a preliminary injunction.  *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002).  To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the

---

[8] Since petitioners filed their motion, two detainees at the Facility have tested positive for COVID-19.  Docket No. 27-1 at 2, ¶ 3.  The first detainee was placed in isolation upon arrival and had contact with one other detainee who is also in isolation. *Id.*, ¶ 3a.  The second detainee was placed in an intake dormitory with ten other detainees before being placed in isolation upon receiving a positive test.  *Id.* at 2-3, ¶3b.  The ten detainees who had contact with the second detainee remain in a cohort and have not had contact with any other detainees.  *Id.*

merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of

preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the

injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010);

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat.

Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)).  "[B]ecause a preliminary injunction is an

extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics

USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009)

(quotations and citation omitted).  Granting such "drastic relief," *United States ex rel.

Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886,

888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*,

731 F.2d 676, 678 (10th Cir. 1984).

There are three types of preliminary injunctions that are disfavored:

(1) injunctions that disturb the status quo, (2) injunctions that are mandatory rather than

prohibitory, and (3) injunctions that provide the movant substantially all the relief it could

feasibly attain after a full trial on the merits.  *See Schrier v. Univ. of Colo.*, 427 F.3d

1253, 1260 (10th Cir. 2005).  In seeking a disfavored injunction, "the movant must make

a strong showing both with regard to the likelihood of success on the merits and with

regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016)

(quotations and alterations omitted); *see also Schrier*, 427 F.3d at 1259 (stating that

such injunctions "must be more closely scrutinized to assure that the exigencies of the

case support the granting of a remedy that is extraordinary even in the normal course"

(quotations omitted)).

Petitioners seek an injunction that alters the status quo.  Namely, petitioners seek release from detention.  Therefore, petitioners' motion falls under the heightened standard for preliminary injunctions.  *See Schrier*, 427 F.3d at 1260.

## III.  MOTION FOR TEMPORARY RESTRAINING ORDER

### A.  Likelihood of Success on the Merits

The Court first addresses petitioners' likelihood of success on the merits. Because petitioners seek a disfavored injunction, they must make a "strong showing" on this factor.  *Kobach*, 840 F.3d at 724.

### 1.  Release Pursuant to § 2241

Petitioners seek immediate release from detention pursuant to 28 U.S.C. § 2241, which codifies one avenue of federal habeas corpus relief.[9]  Immigration detainees are entitled to habeas relief if they are held "in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  Specifically, the writ of habeas corpus is designed to challenge "the fact or duration" of confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.").  In other words, habeas corpus, and thus § 2241, offers detainees release from custody when the very fact that they are detained, or detained for a certain length of time, is unlawful.  For example, § 2241 may offer relief for persons in

---

[9] The other avenue for those in federal custody, 28 U.S.C. § 2255, is for "prisoner[s] in custody under sentence of a court."  Because petitioners are civil immigration detainees and are not prisoners, only § 2241 is available to them.

immigration custody who allege that they were unlawfully arrested and then detained.

*See Pelletier v. United States*, 588 F. App'x 784, 791-92 (10th Cir. 2014) (unpublished).

In addition to challenging the underlying basis for detention, detainees can

challenge the conditions of their confinement.  As a result, even if lawfully detained

pursuant to either a constitutional immigration law or court-imposed sentence, an

immigration detainee or an inmate can base a legal claim on the conditions under which

that detention is effectuated.  For example, the Tenth Circuit has recognized a challenge

to mental health services available while being detained as a condition of confinement

claim.  *See Blackmon v. Sutton*, 734 F.3d 1237, 1239-40 (10th Cir. 2013).  These sorts

of claims, however, are brought pursuant to *Bivens v. Six Unknown Named Agents*, 403

U.S. 388 (1971), or 42 U.S.C. § 1983.

Here, petitioners argue that § 2241 is the proper vehicle for relief because "their

continued confinement is unconstitutional and [] they are entitled to immediate release."

Docket No. 24 at 12.  Furthermore, because petitioners request immediate release, they

argue that their request "lies 'within the core of habeas corpus.'" *Id.* (quoting *Preiser*,

411 U.S. at 487).  Petitioners argue that their claim is not one challenging the conditions

of confinement because they do not request that respondents either improve any

conditions at the Facility or provide monetary relief.  *Id.* at 13.  In essence, petitioners

contend that the remedy – here, release – automatically places them within § 2241's

reach.  Petitioners cite several court decisions that have provided relief pursuant to

§ 2241 under similar circumstances.  *See, e.g.*, *Essien v. Barr*, No. 20-cv-1034-WJM,

9

2020 WL 1974761 (D. Colo. Apr. 24, 2020); *Perez v. Wolf*, 2020 WL 1865303 (N.D. Cal. Apr. 14, 2020); *Malam v. Adducci*, 2020 WL 1672622 (E.D. Mich. Apr. 5, 2020); *Coreas v. Bounds*, 2020 WL 1663133 (D. Md. Apr. 3, 2020).

In opposing the petition, respondents argue that, at its core, petitioners' claim is that the conditions at the Facility are unconstitutional and that the precautions taken at the Facility are insufficient to protect petitioners' constitutional rights.  Docket No. 22 at 24.  Because petitioners attack the conditions of their confinement, respondents contend that petitioners may not proceed under § 2241, which is reserved for attacking the validity of detention itself.  *Id.* at 23-24.

Resolving this dispute first requires determining whether § 2241 permits relief for conditions of confinement claims in addition to claims challenging the fact or duration of detention.  If it does, then the debate over whether petitioners are actually challenging the fact or conditions of confinement is moot.

The Supreme Court has not squarely addressed whether habeas is "available to challenge [] prison conditions."  *Preiser*, 411 U.S. at 499.  That said, the Supreme Court does draw a distinction between habeas on the one hand and civil rights actions on the other: "[W]hen a [] prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is . . . immediate release . . . , his *sole* federal remedy is a writ of habeas corpus."  *Id.* at 500 (emphasis added).  Federal law "opens two main avenues to relief on complaints related to imprisonment."  *Close*, 540 U.S. at 750.  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances

of confinement may be presented in a § 1983 action." *Id.* Thus, although the Supreme Court has left open the possibility that habeas may allow some conditions of confinement claims, it still reasons that habeas and conditions of confinement claims are designed with two different goals. Habeas, and therefore § 2241, is designed to challenge the validity of detention – whether there is any lawful authority whatsoever to detain the person in question. Conditions of confinement claims assume the validity of detention, but attack the means, methods, and execution of that detention.

Although the Supreme Court has not addressed the issue of whether a § 2241 claim may be used to challenge prison conditions, the circuit courts have, and are split on the issue. *See Wilborn v. Mansukhani*, 795 F. App'x 157, 163-64 (4th Cir. 2019) (collecting cases). The Tenth Circuit has stated that "[i]t is well-settled law that prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits filed pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) – not through federal habeas proceedings." *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011). When a detainee's "challenge is properly construed as a challenge to the conditions of his confinement[,] [it] must be brought pursuant to *Bivens*." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1036 (10th Cir. 2012).[10] As a result, the Tenth Circuit seems to

---

[10] Although these statements are unqualified, *Standifer* and *Palma-Salazar* both rely on *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997), which specifically limits its holding to the conclusion that § 2241 is not a civil action within the meaning of 28 U.S.C. §§ 1915(a)(2) and (b), even though *McIntosh* discusses the differences between habeas and conditions of confinement claims. Nevertheless, the Tenth Circuit has repeatedly stated that habeas is not a proper vehicle for conditions of confinement claims – for example, in *Standifer* and *Palma-Salazar* – and so while there

foreclose the type of relief that petitioners request.

The distinction between habeas and civil rights actions makes practical sense.  If a detainee's detention itself is unlawful, the remedy is release, which is why habeas permits release when a detainee challenges "the fact or duration" of confinement. *Preiser*, 411 U.S. at 500.  However, if detention itself is lawful, but the surrounding circumstances are not, release is not the only possible remedy: conditions can be improved to make them constitutional.

Given these considerations, and the weight of Tenth Circuit authority, the Court finds that § 2241 is not the proper vehicle for a conditions of confinement claim and respectfully disagrees with the courts that have concluded otherwise.  The Court is not alone in this conclusion.  *See, e.g.*, *Basri v. Barr*, No. 20-cv-00940-DDD, slip op. at 9 (D. Colo. May 11, 2020); *Betancourt Barco v. Price*, 2020 WL 2099890, at *6 (D.N.M May 1, 2020); *Toure v. Hott*, 2020 WL 2092639, at *6 (E.D. Va. Apr. 29, 2020).

Next, the Court must determine whether petitioners are attacking the fact of confinement or are simply attacking the conditions of their confinement.  Throughout petitioners' motion, they describe allegedly unconstitutional conditions at the Facility. *See* Docket No. 2 at 23-24.  For example, they allege that the Facility "does not provide necessary screening and testing practices," that detainees "cannot engage in six feet of physical distancing," and detainees "have limited or no access to hand sanitizer, masks or gloves."  *Id.*  Petitioners state that "[t]hese unhygienic *conditions* serve no legitimate

---

may be some doubt as to whether the Tenth Circuit permits conditions of confinement claims to proceed through habeas, the weight of authority says it would not.

12

government objective." *Id.* at 24 (emphasis added).  If these conditions were to disappear, for instance, were the pandemic to suddenly end with the development of a vaccine, so too would the grounds for petitioners' challenge to their confinement.  *See Basri*, No. 20-cv-00940-DDD, slip op. at 9 ("[I]t is the conditions, not the fact of his detention, he is challenging when he cites the undoubtedly dangerous *condition* of the spreading COVID-19 disease."); *Toure*, 2020 WL 2092639, at *6 ("[T]heir challenge involves the legality of their confinement only insofar as the conditions of their confinement fail to meet constitutional standards.").  Put another way, were the Court to grant petitioners' immediate release under some sort of supervision as they request – meaning petitioners would still be in ICE custody, *see Pelletier*, 588 F. App'x at 791-92 – only the conditions of their confinement (or custody) would change, not the underlying legal basis for keeping petitioners in custody.  As a result, the Court finds that petitioners attack the conditions of their confinement and not the fact or duration of their confinement.

Petitioners argue that this conclusion is incorrect because their confinement itself violates "their Fifth Amendment right to be free from serious threats to health and life, given their particular vulnerabilities to the COVID-19 pandemic."  Docket No. 24 at 13.  They argue that, because they "seek[] the remedy of immediate release," their claim automatically falls within § 2241's reach.  *Id.* (citation omitted).  This argument proves too much.  If petitioners were correct, then any time a detainee requests immediate release – no matter the basis for that relief – the appropriate vehicle would be § 2241.  Such a conclusion would render a § 2241 claim no different than a civil rights or *Bivens*

action.  The Court therefore finds this argument unpersuasive.

Because petitioners attack the conditions and not the fact of their confinement, § 2241 is not an appropriate vehicle for their claim.  As a result, the Court finds that petitioners do not have a likelihood of success on the merits.

>  *2.  Injunctive Relief*

Petitioners contend that, even if § 2241 is an improper vehicle for the relief they seek, petitioners "filed the instant case as a civil action, and this Court can and should order release as a form of injunctive relief."  Docket No. 24 at 13-14.  Specifically, petitioners argue that "under Rule 65 and a court's inherent equitable authority to remedy unconstitutional government conduct, courts may issue 'orders placing limits on a prison's population.'"  Docket No. 2 at 32 (citing *Brown v. Plata*, 563 U.S. 493, 511 (2011)).

The Court rejects this argument for two reasons.  First, petitioners filed a petition for writ of habeas corpus under § 2241, not a civil rights action.  The motion for a TRO seeks relief pursuant to the habeas petition.

Second, *Brown* has nothing to do with a court's inherent equitable powers to release prisoners.  Rather, *Brown* involved years-long litigation to reduce overcrowding in California state prisons. 563 U.S. at 512.  The focus of *Brown* was whether the order of the three-judge panel complied with the Prison Litigation Reform Act ("PLRA"), which contains specific statutory requirements that must be met before a court may issue an order "that has the purpose or effect of reducing or limiting the prison population."  *Id.* at 511.  Thus, *Brown* is inapposite.

The Court finds that petitioners have not demonstrated a likelihood of success on their theory of a constitutional right to immediate release.[11]

## B.  Remaining TRO Factors

Petitioners must make a showing on each factor for a TRO to succeed.  Because petitioners have failed to demonstrate a likelihood of success on the merits, the Court does not address the remaining elements of the TRO.  See *Winter*, 555 U.S. at 23-24 (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief" and, therefore, declining to address the likelihood of success on the merits); *see also Big O Tires, LLC v. Felix Bros., Inc.* 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every factor because "the resolution of them will have no bearing on the outcome").

## IV.  PETITION FOR WRIT OF HABEAS CORPUS

The petition for writ of habeas corpus seeks petitioners' immediate release for the same reasons found in the motion for TRO.  *See* Docket No. 1 at 33-38.  As stated above, petitioners may not make a conditions of confinement claim through the writ of habeas corpus.  As a result, the Court dismisses the petition for writ of habeas corpus. *See, e.g.*, *Basri*, No. 20-cv-00940-DDD, slip op. at 18 (dismissing petition because petitioner was not entitled to release under § 2241); *Rani v. Barr*, No. 19-cv-02017-RBJ, 2019 WL 6682834, at *4 (D. Colo. Dec. 6, 2019) (same); *Terrell v. Matevousian*, No. 18-

---

[11] Because petitioners may not proceed under § 2241, the Court does not need to address petitioners' arguments under the Fifth and Eighth Amendment.  Even if respondents have violated petitioners' Fifth and Eighth Amendment rights, an argument on which the Court takes no position, the Court could not order petitioners released.

15

cv-03014-WJM, 2019 WL 2774222, at *4 (D. Colo. July 2, 2019) (same).

## V.  CONCLUSION

For the foregoing reasons it is

**ORDERED** that Petitioners' Motion for Temporary Restraining Order [Docket No. 2] is **DENIED**.  It is further

**ORDERED** that petitioners' Petition for Writ of Habeas Corpus [Docket No. 1] is **DISMISSED**.  It is further

**ORDERED** that this case is closed.


DATED May 27, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

16